DENISE KINGUE BONNAIG, ESQ.
Denise K. Bonnaig & Associates
25 Murray Street, 6D
New York, New York 10007
(212) 374-1511
dkb@bonnaiglaw.com
*Creditor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re

         JUAN NUNEZ,

                 Debtor.
-----------------------------------------------------------X
DENISE KINGUE BONNAIG, ESQ., d/b/a
DENISE K. BONNAIG & ASSOCIATES,

                 Plaintiff,

   -against-

JUAN NUNEZ,

                 Defendant.
-----------------------------------------------------------X

Case No. 09-22603-rdd

Chapter 7

COMPLAINT

Adversary Proceeding No.:

The Plaintiff, complaining of the Defendant, alleges:

Parties, Jurisdiction, and Venue

1. The Defendant Juan Nunez ("Nunez"), an accomplished Human Resources professional, currently earning a six figure salary through his job at the University of Massachusetts, is the debtor in the above Chapter 7 proceeding, case number 09-22603-rdd.

2. The Plaintiff ("Bonnaig Firm") is a member of Denise K. Bonnaig & Associates, which is located in the neighborhood of Tribeca, in New York City.

3. The Bonnaig Firm is a creditor of the Defendant, having zealously and successfully represented him in a lawsuit against the Fashion Institute of Technology (FIT) and President Joyce Brown, Index No. 100383/08 (N.Y. Sup. Ct., NY Cty, 2008), for nearly four years.

1

4. This is a core proceeding pursuant to 28 U.S.C. § 157.

5. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## NATURE OF THE ACTION AND FACTS

7. This is an adversary proceeding to determine the dischargeability under the Sections 523(a)(2)(A), 523(a)(3) of the Bankruptcy Code of a debt that resulted from a decision and judgment of the Honorable Harold Baer, Jr. (Judge Baer) of the United States District Court, Southern District of New York, in the amount of $80,061.88 plus such interest as may be due thereon.

8. The Debtor is a former long-time client of the Bonnaig Firm, having represented him for nearly four years.

9. On November 16, 2007, the Debtor retained the Bonnaig Firm under a hybrid contingency fee agreement to represent him in litigating his claims under the New York City Human Rights Law, in *Juan Nunez v. Fashion Institute of Technology (FIT), FIT Board of Trustees, and Dr. Joyce Brown, individually, as President of FIT,* Index No. 10383/08 (N.Y. Sup. Ct., N.Y. Cty, 2008).

10. Because the Debtor had entered into a retainer agreement with the Bonnaig Firm for legal services to be rendered in his case, he was aware that at any point during the litigation, he could be liable for legal fees.

11. As a result of being bound by the retainer agreement with the Bonnaig Firm, the Debtor was aware of the potential for a monetary recovery back in 2007, and throughout the nearly four years that the Bonnaig Firm represented him.

## THE BONNAIG FIRM WAS NOT NAMED AS A CREDITOR IN THE DEBTOR'S 2009 CHAPTER 7 BANKRUPTCY PROCEEDING

12. In 2009, the Bonnaig Firm was two years into aggressively litigating Nunez's case against FIT and Dr. Brown in New York State Supreme Court.

13. Unbenownst to the Bonnaig Firm, on April 16, 2009 at 2:59 p.m., the Debtor, through his attorney Robert S. Lewis, Esq., filed a bankruptcy case under Chapter 7 of the U.S. Bankruptcy Code.

14. The Debtor nor his bankruptcy attorney Mr. Lewis notified the Bonnaig Firm that Nunez had filed for bankruptcy.

15. The Bankruptcy Code section 11 U.S.C. Section 101 defines "claim" as the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

16. Based on the retainer agreement entered into with the Debtor, the Bonnaig Firm potentially had a contingent and unmatured claim at the time Nunez filed for bankruptcy on April 16, 2009.

17. The Bonnaig Firm was not invited to the meeting of creditors.

18. Clearly, the Debtor had no intention of naming the Bonnaig Firm, and given that his list of creditors is long, the omission was intentional. He wanted the Bonnaig Firm to keep performing legal services for him without the risk to him that they would move to withdraw from representing him if they were notified of the bankruptcy action.

19. Though Nunez disclosed the existence of the lawsuit against FIT and Dr. Brown, he did not list the Bonnaig Firm as a creditor, though the Bonnaig Firm had been representing him for nearly two years at the time the bankruptcy petition was filed.

20. Clearly, the Bonnaig Firm had a contingent and unmatured claim in 2009, since they had been representing Nunez for two years at that point.

21. The bankruptcy petition was filed on April 13, 2009. However, the Bonnaig Firm had represented Nunez starting in November 2007, and continued to zealously represent him, even after his bankruptcy case was closed:

| | |
|---|---|
| **November 2007 to March 2008** | **Drafted, filed and served Complaint and Amended Complaint and propounded and responded to discovery demands.** |
| **March 2008 to September 2010** | **Engaged in voluminous document discovery; made numerous court appearances; filed and opposed discovery motions; defended Mr. Nuñez's two days of depositions and appeared at his IME; took Dr. Brown's deposition; and filed the Note of Issue.** |
| **October 2010 to December 2010** | **Prepared opposition to FIT's and Dr. Brown's voluminous summary judgment motion.** |
| **January 2011** | **Since Plaintiff defeated FIT's and Dr. Brown's motion for summary judgment, the Bonnaig Firm appeared at a pre-trial conference, and worked with opposing counsel to set a trial schedule.** |
| **February 2011 to April 2011** | **Extensive trial preparations, including preparation of affidavits in lieu of direct testimony; pre-trial briefs; exhibit binders; trial aids; cross-examinations of FIT's and Dr. Brown's witnesses, and briefings to Justice Ramos.** |
| **May 2011** | **Represented Mr. Nuñez for the first 2 weeks of a bench trial before Justice Ramos.** |

| | |
|---|---|
| **June 15, 2011** | **The Bonnaig Firm filed an Order to Show Cause as to why an Order should not be made permitting the Bonnaig Firm to withdraw as attorneys for Mr. Nuñez.** |
| **June 23, 2011** | **Justice Ramos granted Bonnaig Firm's Motion to Withdraw and ruled that the termination of the attorney-client relationship was justified.** |

22. The Debtor is not a first time litigant; prior to retaining the Bonnaig Firm, he had retained other attorneys to file other lawsuits, so he was aware that an attorney's ongoing representation hinges upon an attorney getting paid, even under a contingency fee agreement.

23. Debtor did not move to reopen his bankruptcy case and add the Bonnaig Firm as a creditor in 2009, 2010, or even in 2011, after the Bonnaig Firm successfully defeated FIT's and Dr. Brown's Motion for Summary Judgment and represented the Debtor at the trial of his claims.

24. Nunez had motive to conceal the bankruptcy case from the Bonnaig Firm- he did not want to lose the quality legal representation he was benefiting from in litigating his claims against FIT and its President, Dr. Brown.

25. As a result of his obtaining the Bonnaig Firm's legal services through false pretenses, or false representation, he successfully defeated the Defendants' Motion for Summary Judgment, and enjoyed the benefit of taking his case to trial before Justice Ramos.

26. By not listing the Bonnaig Firm's claims in bankruptcy paperwork, he gained an unfair advantage, i.e. he enjoyed outstanding, zealous representation without the threat of the Bonnaig Firm's withdrawal from his case.

## THE JUDGMENT AWARDED BY JUDGE BAER, WAS AN ATTORNEYS' FEE AWARD GRANTED AS A RESULT OF ACTUAL DAMAGE INCURRED BY THE BONNAIG FIRM FROM NUNEZ'S ACTIONS

27. After the Bonnaig Firm successfully defeated the Summary Judgment motion brought by FIT and Dr. Brown in January 2011, and Nunez's case went to trial in May 2011, the Bonnaig Firm encountered irreconcilable differences, among other things, on litigation strategy, which resulted in the Bonnaig Firm's inability to effectively communicate with, and represent Nuñez.

28. Indeed, the Bonnaig Firm experienced substantial and material disagreement with Nuñez about the prosecution of his case, including his outright refusal to be present for each day of the ongoing trial.

29. The relationship between Nuñez and the Bonnaig Firm became extremely contentious, because he asked the Bonnaig Firm to go against the litigation strategy for his case, and also against the Bonnaig Firm's expertise as trial counsel.

30. The Bonnaig Firm moved to withdraw from the case, for cause, pursuant to CPLR 321(b)(2) and the New York Rules of Professional Conduct.

31. In his opposition to the Bonnaig Firm's Order to Show Cause, Nuñez did not dispute the quality of the Bonnaig Firm's work.

32. In fact, Nuñez did not want the Bonnaig Firm to withdraw from his case, but rather, wanted the Bonnaig Firm to continue to represent him, and so stated in his opposition papers.

33. In hindsight, it's clear Nunez was aware that it would be impossible to find other counsel to represent him, since he was now an individual who had engaged in bankruptcy litigation, thereby discouraging other lawyers from representing him.

34. On June 23, 2011, Justice Ramos granted the Bonnaig Firm's motion to withdraw, for just or good cause. Specifically, he opined that withdrawal was justified:

> THE COURT: Mr. Nuñez, you can do whatever you want to do, but your attorney has the right to say that she or her firm determines what the strategy is going to be, not you. And if you are not going to go along and cooperate with their strategy, and pay the bills as they come due, they have every right to withdraw from the case, and you will have to represent yourself.
>
> MS. BONNAIG: Your Honor, if you look at my papers, I made no issue whatsoever about the bill. The issue was -- and, again, I feel so uncomfortable talking about this...
>
> THE COURT: Well, he doesn't want to be present during the testimony of the other witnesses.
>
> MS. BONNAIG: If he is not going to be here during the testimony of the five defense witnesses, how am I going to put on a rebuttal case?
>
> MR. NUÑEZ: I think I can appear on a day's notice. I will come down.
>
> THE COURT: What counsel is saying, how can you call rebuttal witness if you don't hear the testimony, you can't afford to pay for the transcript. You are tying her hands to the point where she feels she is going to lose this case, not because she is not doing a good job, but because you are not being a cooperative client. It's a two-way street. It's a relationship.
>
> MR. NUÑEZ: I simply understand that, Your Honor. What am I supposed to do financially? If I lose my job —
>
> THE COURT: Sir, it's not my role to tell you how to live your life. It's not my role to advise you on this. I'm going to release counsel as being your attorney.

7

> MS. BONNAIG: Thank you, Your Honor.
>
> THE COURT: You are handcuffing her. You are the plaintiff here, not the defendant. You are suing. You are the one who wants to come to court, come here testify, tell me what the case is about and ask me to make a decision. I'm willing to do that. If you don't want to be here when the defendants put their case in, that's fine. But at some point, you will come back and finish your case, and I will render a decision based upon the testimony and any exhibits I have. It's an odd way to try a case. I can understand why counsel don't want to be a part of this.

35. Later on in June 2011, when Justice Ramos of the New York State Supreme Court permitted the Bonnaig Firm to withdraw from representing the Debtor, for cause, the Debtor still did not move to reopen his bankruptcy case to add the Bonnaig Firm as a creditor.

36. In early 2012, the Bonnaig Firm notified the Debtor and his attorney Jonathan Cohen, Esq., as to how much money the Debtor owes the Bonnaig Firm under a quantum meruit recovery, for the nearly four years of representation the Bonnaig Firm provided.

37. On February 28, 2012 Justice Ramos stated on the record before the Bonnaig Firm, and Nunez's attorney Mr. Cohen, that:

> *Everyone knows that an attorney is entitled to be paid. And quantum meruit is certainly a valid basis upon which to determine the fee, but you have not sued Mr. Nuñez for the fee... What you want is a judgment, and I understand that. And you are probably entitled to one, but you've got to bring a plenary action against the client for the entry of judgment.*

38. Mr. Cohen did not dispute that the Bonnaig Firm was entitled to a quantum meruit recovery, on account of Nunez's actions.

39. Despite the Debtor being on notice as of February 28, 2012, that the Court had opined that the Bonnaig Firm was probably entitled to a judgment against him, he still did nothing to to reopen his bankruptcy case to add the Bonnaig Firm as a creditor.

40. In the spring of 2012, the Bonnaig Firm filed a lawsuit in the Southern District of New York, against the Debtor, alleging a claim for a six figure quantum meruit recovery.

41. Nunez still did not move to reopen the bankruptcy case to add the Bonnaig Firm as a creditor.

42. In 2012, Nunez had representation throughout the litigation of *Bonnaig v. Nunez* (SDNY 2012) and at no time did he or his attorney assert that the Bonnaig Firm was not owed any money because they were or could potentially be creditors in a bankruptcy case.

43. In November 2012, the Bonnaig Firm filed a motion for summary judgment on its quantum meruit claim, and also to dismiss Nunez's affirmative defenses.

44. The Bonnaig Firm was successful.

45. In December 2012, Judge Baer, after discussing how the Bonnaig Firm had been damaged by Debtor's actions, granted summary judgment to the Bonnaig Firm, and permitted judgment to be entered against the Debtor.

46. The Debtor's actions created a realm of debt which included the litigation fees and costs incurred by the Bonnaig Firm in the prior litigation.

47. If the nondischargeable debt is based on a prior court judgment that includes attorneys' fees, the attorneys' fees awarded by the Court are part of the nondischargeable debt.

## THE ATTORNEYS' FEES AWARDED BY JUDGE BAER ARE A DIRECT CONSEQUENCE OF NUNEZ'S IMPROPER ACTIONS, AND MUST BE DEEMED NON-DISCHARGEABLE

48. But for Nunez's conduct in the midst of trial, which forced the Bonnaig Firm to withdraw for cause, there would be no liability for attorneys' fees awarded in quantum meruit.

49. At no time in 2009, 2010, 2011, or 2012 (four years) did Nunez list the Bonnaig Firm as a creditor.

50. By not listing the Bonnaig Firm's claims in bankruptcy paperwork, he gained an unfair advantage, i.e. he enjoyed outstanding, zealous representation without the threat of the Bonnaig Firm's withdrawal from his case.

51. The quantum meruit judgment awarded to the Bonnaig Firm is a direct consequence of Nunez's behavior during a prior trial, which explains why Nunez did not vigorously oppose the Bonnaig Firm's summary judgment motion on its quantum meruit claim, and essentially conceded to the withdrawal of the affirmative defenses in his Answer.

52. To put off the process of garnishing his wages, on January 23, 2013, the Debtor filed a frivolous appeal of Judge Baer's decision with the Second Circuit Court of Appeals.

53. Even after learning of the judgment entered against him by Judge Baer in *Bonnaig v. Nunez* (SDNY 2012), Nunez did nothing to reopen his bankruptcy case.

54. On May 21, 2013, the Bonnaig Firm received an Amended Schedule of Creditors, in which the Debtor is admitting he owes the Bonnaig Firm money.

55. It was only after receipt of this Amended Schedule of Creditors that the Bonnaig Firm learned it had never been served with Nunez's Motion to Reopen his bankruptcy case, which is why the Motion to Reopen had been granted 'unopposed.'

## NUNEZ MUST BE COLLATERALLY AND/OR JUDICIALLY ESTOPPED FROM CONTESTING THE FACTS AND CONCLUSIONS OF LAW IN JUDGE BAER'S DECISION

56. Collateral estoppel effect must be accorded to Judge Baer's findings, because:

   a) The issue sought to be precluded is the same as that involved in *Bonnaig v. Nunez* (SDNY 2012), i.e. whether Nunez must pay the Bonnaig Firm its fees;

   b) The issue was actually litigated before Judge Baer;

   c) Judge Baer issued a valid and final judgment;

   d) The determination was essential to the judgment.

57. Based on the findings of fact and conclusions of law set forth in Judge Baer's decision, and the fact that Nunez never named the Bonnaig Firm as a creditor in his bankruptcy action, he should be estopped from contesting such facts and conclusions of law.

58. Also, based on judicial estoppel, he cannot take an inconsistent position—that the Bonnaig Firm is not a creditor—and after a judgment is entered against him, assert that the Bonnaig Firm is a creditor to avoid paying the Bonnaig Firm pursuant to the judgment awarded by a federal court.

59. Nunez's reliance on the advice of bankruptcy attorney Robert Lewis in not naming the Bonnaig Firm as a creditor until after Judge Baer entered judgment against Nunez, does not preclude nondischargeability.

## THE LENGTH OF TIME THE DEBTOR WAITED TO REOPEN IS MARKED BY A WANT OF GOOD FAITH

60. In January 2013, Nunez appealed the decision and judgment of Judge Baer, to the Second Circuit Court of Appeals.  He did not argue that the debt was dischargeable.

61. On May 21, 2013, he added the Bonnaig Firm in the Amended Schedule of Creditors in a bankruptcy proceeding.

62. Reopening his bankruptcy case only after filing the Appeal shows that Nunez is admitting that he owes the Bonnaig Firm money, and that the appeal filed with the Second Circuit is frivolous.

63. The Debtor only moved to reopen the bankruptcy case and named the Bonnaig Firm as a creditor after he had incurred an unfavorable and costly result for himself as a result of the judgment entered against him in the Southern District of New York.

64. Nunez's actions are marked by a "want of good faith," because he has waited three years after his bankruptcy case closed, even though he had an attorney representing him in his bankruptcy matter.

## CLAIM FOR RELIEF
## (11 U.S.C. Section 523(a)(2)(A))

65. The Bonnaig Firm repeats each allegation pleaded in paragraphs 1 to 69 of this Complaint, as if each such allegation had been pleaded here in full.

66. The claims and findings embodied in Judge Baer's decision and Judgment constitute claims for money and services that Nunez obtained through false pretenses or false representations, or actual fraud.

67. Based on the foregoing, the Bonnaig Firm's claims should be excepted from Nunez's discharge pursuant to 11 U.S.C. Section 523(a)(2)(A) of the Bankruptcy Code

CLAIM FOR RELIEF
523(a)(3)

68. The Bonnaig Firm repeats each allegation pleaded in paragraphs 1 to 72 of this Complaint, as if each allegation had been pleaded here in full.

69. Nunez did not list or schedule the Bonnaig Firm has a creditor in his Chapter 7 bankruptcy petition..

70. Based on the foregoing, the Bonnaig Firm's claims should be excepted from Nunez's discharge pursuant to 11 U.S.C. Section 523(a)(3) of the Bankruptcy Code.

WHEREFORE, the Plaintiff demands judgment against Nunez declaring that Nunez's discharge of his debts to the Plaintiff, in the amount of $80,061.88 plus such interest as may be due thereon, be denied pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, and that the Plaintiff have such other and further relief as the Court deems just and proper, together with the costs and disbursements of this adversary proceeding.

DATED:    October 3, 2013

Respectfully,

DENISE K. BONNAIG & ASSOCIATES

_____
DENISE K. BONNAIG (DB 6898)
MAHIMA JOISHY (MJ 3924)

25 Murray Street, 6D
New York, New York 10007
(212) 374-1511
dkb@bonnaiglaw.com